**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SPARK THERAPEUTICS, INC., | **:** | |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | CIVIL ACTION NO. _____ |
| | **:** | |
| BLUEBIRD BIO, INC., | **:** | **JURY TRIAL DEMANDED** |
| | **:** | |
| Defendant. | **:** | |

## COMPLAINT

Plaintiff Spark Therapeutics, Inc. ("Spark"), by and through its undersigned counsel, avers as follows for its Complaint against defendant Bluebird Bio, Inc. (the "defendant" or "Bluebird"):

## NATURE OF THE ACTION

1.     This is an action for trademark infringement, unfair competition, and cyber piracy under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; dilution under 6 Del. C. § 3313; deceptive trade practices under 6 Del. C. § 2532; and unfair competition under Delaware common law. Plaintiff Spark and defendant Bluebird Bio are competing gene therapy companies that both are developing therapies for blood disorders.  Bluebird has started to use SPARK as a trademark, and Spark wishes to stop this infringing conduct and be compensated for its damages.

## INTRODUCTION

2.      Eight years ago, when Spark was spun out of the Children's Hospital of Philadelphia ("CHOP"), it chose a name that was powerful, active, distinct from gene therapy, and protectable as a trademark.  It chose the name and logo for "SPARK" for its business:



3.      Through hard work, great science, and substantial investment, the Spark company name and trademarks (collectively the "SPARK Marks") became synonymous with innovative gene therapies and educational outreach programs for patients suffering from genetic disease. Spark is now a globally recognized, industry-leading biotechnology company, headquartered in Philadelphia, that specializes in the research and development of groundbreaking gene therapy cures for a range of inherited rare genetic diseases, including hemophilia, inherited retinal disease, and neurodegenerative disease.  Spark was the first biotechnology company to commercialize a gene therapy in the United States, and the first company to have a gene therapy approved by health authorities in both the United States and in the European Union, bringing to doctors and patients the prospect of a one-time treatment to cure or mitigate serious diseases. Spark has invested significantly in its branding and developed extensive goodwill therein such that the SPARK Marks are distinctive.

4.      One of Spark's primary areas of focus is hemophilia, a rare bleeding disorder. Spark is developing a gene therapy for hemophilia A that is currently in clinical trials. Accordingly, the SPARK Marks are well known with doctors, nurses, and other caregivers who treat hemophilia (and other blood disorders such as sickle cell disease), including hematology-oncology physicians, internal medicine physicians, pediatricians, and the nurses and other

caregivers who work in these fields. The SPARK Marks also are well-known with patients with rare disease and rare disease patient advocacy groups (such as NIH's National Heart, Lung, and Blood Institute, and the National Organization for Rare Diseases).  The SPARK Marks also are known to other companies in the healthcare and biotech/pharma industries, as well as with the professional investors who invest in such companies.

5.      The reputation and goodwill associated with the SPARK Marks is of immense value to Spark. Spark has invested substantial time, money and effort to establish, own, and protect the reputation of the SPARK and SPARK THERAPEUTICS brand. This includes a substantial investment in the marketing and use of its SPARK Marks, and the filing of trademark applications and obtaining registrations in more than 15 jurisdictions, including the United States. Spark was first issued a trademark registration in the United States for the mark SPARK in 2016, for use with "...*hematologic disorders and diseases*," (Reg. No. 5,068,997) (emphasis added), with its legal priority date being in 2013. Spark also uses the SPARK Marks in connection with educational, patient advocacy, and medical research services regarding information relevant to patients with hemophilia and other genetic diseases.

6.      Defendant Bluebird is a competing gene therapy company based outside Boston that also is developing gene therapies. One of its focuses is gene therapy treatments for the blood disorder sickle cell anemia.  Sickle cell anemia is researched and treated by the same physicians and scientists who work on hemophilia. For many years, Bluebird has been well aware of Spark and the Spark Marks in the fields of gene therapy, patient outreach, and blood disorders.

7.      Bluebird has misappropriated and diluted Spark's SPARK Marks as part of defendant's "Be the SPARK" educational and informational campaign directed to sickle cell

disease.  For example, Bluebird sent the following LinkedIn post on May 11, 2021, the second day

of the 24th Annual Meeting of the American Society of Gene & Cell Therapy ("ASGCT"):



(https://www.linkedin.com/feed/update/urn:li:activity:6797574904876298240.)

8.      Through at least this LinkedIn post (which already has nearly 2000 views) and other

social media outlets, and its website located at www.sparksicklecellchange.com, Bluebird is

promoting its campaign using several variations of the mark "**SPARK**."  Bluebird is actively using

catch phrases such as "**Be the SPARK**," "**Let's Spark Change in Sickle Cell**," "**Sign Up to Be**

**the Spark**," and "**Be the Spark for Better Care in Sickle Cell**" on its website and various other

marketing materials.  Bluebird's use of "SPARK" in its materials is both the most prominent aspect

of the catch phrase, and undoubtedly trademark use designed to indicate the source of Bluebird's

services.

4

9.      In addition, Bluebird has filed several "SPARK"-formative trademark applications in the United States for the marks **BE THE SPARK**, **I AM THE SPARK**, **SPARK CHANGE**, and **SPARK ACTION**, all designating promotional and educational activities that appear to be the core services of its "Be the Spark" campaign.

10.      Bluebird's acts are both illegal and upon information and belief intentionally designed to take advantage of the good will in Spark's name, and to injure Spark.  Spark brings this legal action to protect its own reputation and brand, and to stop misconduct that affects the entire gene therapy—and greater medical and patient—communities that both companies ultimately serve.  Bluebird's conduct is likely to cause confusion, dilution, and irreparable injury to Spark.  Bluebird's use of its SPARK marks must stop.

## THE PARTIES

11.      Spark is a Delaware corporation with its principal place of business at 3737 Market Street, Suite 1300, Philadelphia, PA 19104.

12.      Bluebird Bio, Inc. is a Delaware corporation with a principal place of business at 60 Binney Street, Cambridge, MA 02142.

## JURISDICTION AND VENUE

13.      This action arises under the Lanham Act, Title 15 of the United States Code, and, accordingly, jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.      This Court has personal jurisdiction and proper venue under 28 U.S.C. § 1391 over defendant because defendant is incorporated in Delaware, and, on information and belief, carries on substantial and continuous business activities in Delaware. Moreover, upon information and belief, a substantial part of the events and rights giving rise to this action occurred in and exist in

this District.  Venue is convenient in this District, as the parties are incorporated here, and many key documents and witnesses reside in or near this District.

## GENERAL ALLEGATIONS

15.     The trade name "Spark" and the SPARK Marks are inherently distinctive for Spark's gene therapy products and services.

16.     Spark is the owner of U.S. Federal Registration No. 5,068,997 for the mark SPARK® for "*biologic preparations for use in the diagnosis and treatment of retinal degenerative and **hematologic** disorders and diseases*" in International Class 5 ("the '997 Registration").  Spark has used the mark SPARK® in connection with these goods since at least as early as February 2014.  A copy of the registration certificate for the '997 Registration is attached hereto as **Exhibit A**.

17.     Spark owns and has continuously used its SPARK word mark and its  design mark[1] in connection with not just its biologic therapies, but also education initiatives related to genetic disease and potential genetic therapies, as well as patient advocacy services.

18.     In its communications, Spark places the primary emphasis on the word "SPARK." When either Spark employees or members of the medical or financial communities refer to plaintiff, they typically call it "SPARK."   When the full company name is used, "Spark" is typically shown in larger, more stylized type than the other parts of the name.

---

[1]     This Spark design mark is the subject of U.S. pending Application Serial Nos. 87/312,892 and 87/312,895, filed on January 25, 2017 with claimed first use dates as least as early as October 2013 and February 2014.

19.     Spark also promotes the SPARK Marks on social media, including Twitter and LinkedIn.  Spark owns and uses the domain name "sparktx.com," in which the trademark "SPARK" is instantly recognizable.

20.     With regard to its biological therapies, Spark makes extensive use of its SPARK Marks via the launch and commercialization of one such product, as well as via prominent clinical trials for other therapies and diseases.

21.     Specifically, in early 2018, after successful clinical trials dating back to 2014, Spark launched LUXTURNA® to treat blindness caused by a specific retinal mutation.  LUXTURNA® is the first directly administered gene therapy approved in the U.S. that *cures* a disease.  The groundbreaking nature of this gene therapy has been widely heralded, and its pioneering FDA approval was recognized throughout the medical community. The SPARK name and logo is on the packaging for the LUXTURNA® therapy.

22.     In the field of blood disorders, Spark has worked with hematology-oncologists around the United States and the world to recruit patients and to progress three prominent clinical trials at approximately 50 locations in the United States and around the world for its therapies to cure patients with Hemophilia A, a serious inherited hematologic disorder that leads to deficient blood coagulation and an increased risk of bleeding or hemorrhaging.

23.     In addition, Spark has for years made extensive use of its SPARK Marks in connection with promoting education and cutting-edge science to physicians, scientists, and other healthcare professionals.  Spark has presented and/or attended annually at the premier United States meeting of hematology-oncologists, the American Society of Hematology, or ASH, where scientists discuss the latest research in such hematological disorders as hemophilia, sickle cell anemia, and leukemia.  Spark's brand name and logo are prominent at this conference, including

Spark-sponsored educational symposia and informational booths on the ASH exhibit floor, as well as other blood-disorder related conferences attended by hematology-oncologists. For years, Spark also regularly has participated in and has extensively used the SPARK Marks in connection with other scientific and healthcare conferences for blood disorders, retinal disease, neurodegenerative disease, many of which have involved Spark personnel discussing its business and technology while displaying the SPARK Marks.

24.     Spark is the owner of U.S. Trademark Application Serial Nos. 87/312,892 and 87/312,895 for the marks ![Spark Therapeutics logo] and ![Spark Therapeutics logo] , for a number of services, including medical research services, and such patient outreach services as "providing a website featuring educational information regarding potential genetic therapy" in International Class 44, and "providing patient advocacy services in the field of gene therapy to people suffering from genetic disorders" in International Class 45.

25.     Spark also uses the Spark Marks in conjunction with its hemophilia community outreach and educational programs, including Hemophilia Forward, which provides patients and caregivers with resources, information, and a community from which to draw support:







(https://sparktx.com/patients-families/hemophilia/; *see also* **Exhibit B**.)



(https://www.hemophiliaforward.com.)

2.      Since Spark's founding, it has secured more than $1 billion in public and private

financing to support the growth of its clinical programs and platform.  As a result, Spark has

enjoyed an extraordinary level of success.  For example, Spark has been named in *MIT*

*Technology Review*'s list of the world's "50 Smartest Companies," in *Bloomberg Businessweek*'s

"50 Companies to Watch," and in *Fast Company* Magazine as one of the World's Most

Innovative Companies.  In 2020, *Science* Magazine ranked Spark as #1  in a list of Top

Employers in the field of biotechnology and pharmaceuticals (after being ranked #5 the year

before), based in part on its success as an "innovative leader in the industry."  (*See*

https://www.sciencemag.org/features/2020/11/city-biotech-love; *see also* **Exhibit C**.)

26.     In 2019, Spark was awarded the prestigious 2019 Prix Galien USA Award for Best Biotechnology Product in the country. Spark has been featured in countless articles from the press, including *The Wall Street Journal, Fortune, Forbes, FierceBiotech, Xconomy*, and other publications.

27.     Spark uses the SPARK Marks on its promotional materials and on labels on its clinical research and FDA-approved products.  Since its 2013 launch, Spark has continuously used the SPARK Marks prominently on its website, its social media postings, its agreements with third parties and patients, its communications with the FDA, its press releases, its financial statements and communications with Wall Street, its medical conference presentations, and even its lab coats and notebooks.

### Bluebird's Intentional Misappropriation of the SPARK Marks

28.     Like Spark, Bluebird is a gene therapy company with a research pipeline that includes treatment for blood disorders – specifically, sickle cell disease, a genetic disorder that causes the body to produce sickle-shaped red blood cells that restrict the delivery of oxygen to body tissues.

29.     Bluebird is well aware of Spark, its competitor in the development of gene therapies.  Bluebird and Spark regularly come across each other at industry events (such as Annual Meetings of the American Society of Gene and Cell Therapy) and conferences.  The CEO's of both companies also frequently interact.

30.     But Bluebird has nonetheless misappropriated Spark's brand as part of defendant's "Be the SPARK" educational and informational campaign directed to sickle cell disease, one of

defendant's primary areas of therapeutic focus and research.[2]  Bluebird's campaign prominently features Spark's SPARK mark in various iterations to identify Bluebird's informational and educational services:

 

(https://www.linkedin.com/feed/update/urn:li:activity:6797574904876298240;
https://www.sparksicklecellchange.com/community-organizations/resources)

---

[2]      Spark supports Bluebird's decision to provide outreach to the Black community in the United States most affected by sickle cell disease.  It just objects (strenuously) to its doing so using Spark's brand.



(https://www.sparksicklecellchange.com/.)

31.     The use of "SPARK" permeates Bluebird's "Be the Spark" campaign website (including "**Be the Spark**," "**Let's Spark Change in Sickle Cell**," "**Sign Up to Be the Spark**," and "**Be the Spark for Better Care in Sickle Cell**").

32.     Bluebird's social media postings about its "Be the Spark" campaign on LinkedIn on the second day of this year's Annual Meeting of the American Society of Gene and Cell Therapy was no coincidence.  The Annual Meeting is a prominent event in the gene therapy community that both Spark and Bluebird regularly attend.

33.     Bluebird also has filed four trademark applications for marks that incorporate Spark's SPARK mark in its entirety:  U.S. Trademark Application Serial Nos. 79/302,808, 79/301,139, 79/302,887, and 79/304,135 for the marks **BE THE SPARK**, **I AM THE SPARK**, **SPARK CHANGE**, and **SPARK ACTION** (collectively, the "Infringing Applications").

34.     The Infringing Applications cover the following services in International Classes 35 and 41:  "Promotional activities relating to awareness of disease states; advertising in the form

of public advocacy to promote disease state awareness; organising advertising programs and initiatives to promote disease state awareness; provision of information, consultancy and advice relating to the aforesaid" and "Educational activities and service related to gene therapy, namely, classes, workshops and/or seminars in the fields of diseases and disease states; organisation of conferences, seminars, symposiums, workshops, and in-person educational forums relating to diseases and disease states; providing prerecorded audio, visual, and audio-visual educational programs, not downloadable, via video-on-demand services, that relate to diseases and disease states."

### Bluebird's Actions Are Likely to Cause Confusion, and to Dilute the SPARK Marks

35.     Bluebird's use and attempted registration of SPARK marks is highly likely to confuse consumers and medical professionals in the gene therapy community, and to weaken Sparks' brand and position in the market by causing such confusion.

36.     **First**, Bluebird's SPARK marks are closely similar to Spark's SPARK Marks in terms of appearance, sound, and commercial meaning.  Indeed, Bluebird has incorporated the SPARK mark in its entirety into Bluebird's infringing marks.  Bluebird's addition of descriptive words and phrases (such as "Be the", "I am the", "Change" and "Action") to the SPARK mark is not sufficient to distinguish the marks.

37.     **Second**, Bluebird is using and has applied to register the infringing marks for identical services to those rendered by Spark for many years under the SPARK mark.  Specifically, Bluebird's infringing SPARK campaign and trademark applications are focused on promotional activities relating to awareness of disease states, and educational services related to gene therapy. Bluebird is using its SPARK marks, and seeking to register them, for a broad range of healthcare services similar to those long-associated with the SPARK Marks, including services that focus on

14

"diseases," "educational activities and service related to gene therapy," and "sickle cell disease and treatment options."

38.     The services recited in the Infringing Applications are highly similar and related to the products and services provided under Spark's SPARK Marks.  Indeed, the Infringing Applications designate the promotion of education for both disease states and gene therapy broadly, and concerning the blood disorder of sickle cell, which is treated by the same physicians who know of the SPARK Marks in connection with Spark's work in hemophilia and its other gene therapies. Therefore, upon information and belief, defendant's SPARK marks are directed at the same or overlapping consumers of the goods and services associated with the SPARK Marks, including but not limited to hematology-oncology physicians, internists and pediatricians, ophthalmologists and neurologists, nurse practitioners and other care givers, and scientists. (See Bluebird's SPARK website at https://www.sparksicklecellchange.com/treatment/professional-support, which lists the foregoing as relevant to sickle cell disease.

39.     Moreover, it would be reasonable for consumers to believe that Spark was expanding its work from hemophilia to the blood disorder sickle cell anemia, as gene therapy is known to be a promising field for the treatment of sickle cell anemia (like hemophilia), and Spark is known as an industry leader in gene therapy.  Moreover, other drug companies and research institutions work on the development of therapies, including gene therapies, for both diseases.

40.     **Third**, Bluebird and Spark are direct competitors, and their respective uses of SPARK marks are directed to the same consumers and medical professionals, and to the gene therapy community.

41.     The remaining likelihood of confusion factors also indicate a likelihood of confusion.  Spark's SPARK mark is extremely strong and well-known in the gene therapy and

hematology communities.   By contrast, Bluebird has only recently commenced using the infringing marks actively.   Bluebird cannot dispute knowledge of its direct competitor's primary mark; thus, upon information and belief, its adoption of the identical mark for its own advertising campaign was intentional.   The parties' goods and services are marketed through the same channels of trade and advertised through the same media, and the targets of the parties' sales efforts are the same.   In sum, Bluebird's usurpation of Spark's SPARK mark for its own SPARK campaign is highly likely to cause consumer and industry confusion, which will injure Spark.

42.      Moreover, any defect, objection to, or fault found with Bluebird's SPARK-related services would necessarily reflect on and seriously injure the reputation that Spark has established for its goods and services and its business.

**FIRST CLAIM FOR RELIEF**
**(Federal Trademark Infringement, 15 U.S.C. § 1114)**

43.      Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

44.      The federally registered mark SPARK (U.S. Registration No. 5,068,997) is the sole and exclusive property of Spark, and Spark has made continuous use of the federally registered mark SPARK since February 2014.

45.      Bluebird is now using "SPARK" and "SPARK"-related marks that are identical to, and/or confusingly similar to, Spark's SPARK Marks.   Bluebird's infringing use of the SPARK Marks includes use of "**Be the Spark**," "**Let's Spark Change in Sickle Cell**," "**Sign Up to Be the Spark**," and "**Be the Spark for Better Care in Sickle Cell**"; United States trademark applications for the marks **BE THE SPARK**, **I AM THE SPARK**, **SPARK CHANGE**, and **SPARK ACTION**; and Bluebird's domain name sparksicklecellchange.com.

46.     Bluebird's use of "SPARK" and "SPARK"-related marks is without Spark's consent.

47.     Bluebird's use of "SPARK" and "SPARK"-related marks constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.     Bluebird has engaged and continues to engage in these activities knowingly, willfully, and in bad faith.

49.     Bluebird's acts of trademark infringement, unless enjoined by this Court, are causing Spark to sustain, and will continue to cause Spark to sustain, irreparable injury.

50.     Spark has no adequate remedy at law.

51.     There is no legitimate hardship to Bluebird in being compelled to stop and correct its infringing conduct.  Public policy also favors the relief that Spark seeks.

52.     Pursuant to 15 U.S.C. § 1116, Spark is entitled to an injunction against Bluebird's continuing infringement of the SPARK Marks.  Unless enjoined, Spark will continue its infringing conduct.

53.     Pursuant to 15 U.S.C. § 1117(a), Spark is entitled to monetary damages, an award of costs and, because this is an exceptional case, reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF
### (False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

54.     Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

55.     As the exclusive and continuous owner and user of the SPARK Marks since 2013, Spark possesses valuable rights to the Spark trade name, trademarks, and services marks, and their associated goodwill.

56.     Bluebird uses "SPARK" and "SPARK"-related marks that are identical to, and/or confusingly similar to, the SPARK Marks.  Bluebird's infringing use of the SPARK Marks includes use of "**Be the Spark**," "**Let's Spark Change in Sickle Cell**," "**Sign Up to Be the Spark**," and "**Be the Spark for Better Care in Sickle Cell**"; United States trademark applications for the marks **BE THE SPARK**, **I AM THE SPARK**, **SPARK CHANGE**, and **SPARK ACTION**; and Bluebird's domain names sparksicklecellchange.com.

57.     Bluebird's use of "SPARK" and "SPARK"-related marks is without Spark's consent.

58.     Bluebird's use of "SPARK" and "SPARK"-related marks is likely to cause confusion, mistake, and deception as to Bluebird's affiliation, connection and association with Spark, and as to the origin, sponsorship, or approval of Bluebird's goods, services, and commercial activities.

59.     Bluebird's use of "SPARK" and "SPARK"-related marks also constitutes commercial advertising and promotion that misrepresents the nature, characteristics, and qualities of Bluebird and its goods, services, and commercial activities.

60.     Bluebird's use of "SPARK" and "SPARK"-related marks constitutes trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Bluebird has engaged and continues to engage in these activities knowingly, willfully, and in bad faith.

62.     Bluebird's acts of trademark infringement and false designation of origin, unless enjoined by this Court, are causing Spark to sustain, and will continue to cause it to sustain, irreparable injury.

63.     Spark has no adequate remedy at law.

64.     There is no legitimate hardship to Bluebird in being compelled to stop and correct its infringing conduct.  Public policy also favors the relief that Spark seeks.

65.     Pursuant to 15 U.S.C. § 1116, Spark is entitled to an injunction against Bluebird's continuing infringement of the SPARK Marks.  Unless enjoined, Spark will continue its infringing conduct.

66.     Pursuant to 15 U.S.C. § 1117(a), Spark is entitled to monetary damages, an award of costs and, because this is an exceptional case, reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Domain Name Piracy, 15 U.S.C. § 1125(d))

67.     Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

68.     Spark owns, has used, and continues to use in commerce the mark SPARK to identify its biopharmaceutical products and services, and has trademark rights and goodwill in that mark.

69.     Bluebird has registered and is using a domain name that is confusingly similar to and dilutive of the SPARK mark which is the subject of both registered and common law rights owned by Spark -- sparksicklecellchange.com.  Bluebird uses this domain to identify its website promoting its infringing SPARK sickle cell disease campaign and gene therapy services in violation of Spark's trademark rights.

70.     This domain name includes as its dominant component the word "Spark," which is identical to the dominant component of plaintiff's SPARK Marks.  As discussed above, plaintiff's SPARK Marks are inherently and highly distinctive.

71.     When Bluebird purchased and began using the sparksicklecellchange.com domain name, it knew about plaintiff's ownership and use of the SPARK Marks.

72.     Bluebird has a bad-faith intent to profit from its use of the sparksicklecellchange.com domain name, in violation of 15 U.S.C. § 1125(d).  The domain name prominently features Spark's SPARK mark, which also serves as Spark's legal company name and the name by which Spark is commonly known in the trade. Spark indisputably has priority of rights in the SPARK mark vis-à-vis Bluebird.  Bluebird is using SPARK as a trademark and not for non-commercial/fair use.  Bluebird intended to divert consumers and medical professionals from Spark's online location to Bluebird's site.  Bluebird's use of the sparksicklecellchange.com domain name is likely to cause consumer confusion by suggesting to the public that Bluebird and Spark are the same company, which they are not, or that there is some connection, association, or affiliation between the two, when there is none.  These acts will result in the diversion of customers to Bluebird's website, and will harm the goodwill associated with the SPARK Marks.

73.     Bluebird's acts, unless enjoined by this Court, are causing Spark to sustain, and will continue to cause it to sustain, irreparable injury.

74.     Spark has no adequate remedy at law.

75.     Because this is an exceptional case, Spark is entitled to its reasonable attorneys' fees.

76.     Spark therefore has been damaged and requests that Bluebird be ordered to cease all use of sparksicklecellchange.com, that such domain name be transferred to Spark, and that Spark be awarded all damages and attorneys' fees that it is entitled to under 15 U.S.C. §§ 1116(a), 1117, and 1125(d).

## FOURTH CLAIM FOR RELIEF
### (Trademark Dilution under Delaware Law; 6 Del. C. § 3313)

77.    Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

78.    Spark's SPARK Marks are inherently distinctive.

79.    Spark has used the SPARK Marks to identify its products and services in the United States, including in the District of Delaware, for several years. By virtue of Spark's extensive and continuous use of the SPARK Marks (both generally, and specifically with regard to the scientific, medical, and pharma industries and communities), the SPARK Marks have become well-known.

80.    The SPARK Marks were distinctive before defendant commenced use of "SPARK" and "SPARK"-related marks.

81.    Defendant's unauthorized use or confusing imitation of SPARK Marks is dilutive of the distinctive quality of SPARK Marks in violation of the Delaware Trademark Act, violation of 6 Del. C. § 3313.  The marks are unquestionably similar in that they share the identical SPARK component.  Since the parties are direct competitors, there is an identity/close similarity of services as well.  The sophistication of consumers is not sufficient to dispel wrongful association of the marks.  Bluebird intended to trade off of Spark's reputation and mark, or acted with reason to know or was willfully blind as to the consequences of its actions.   Spark's marks have significant renown whereas Bluebird has only just begun actively marketing its competing campaign.

82.    Defendant's acts of dilution have caused irreparable injury and damage to Spark, and unless this Court enjoins defendant from further commission of such acts, Spark will continue to suffer irreparable injury and damage for which it has no adequate remedy at law.

83.    Spark is entitled to a judgment enjoining and restraining defendant from engaging in further acts of injury that dilute the Spark Marks and Spark's business reputation.

## FIFTH CLAIM FOR RELIEF
### (Deceptive Trade Practices under Delaware Law; 6 Del. C. § 2532)

84.    Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

85.    Defendant's actions, as described above, constitute deceptive trade practices because such actions, *inter alia*, (a) create a likelihood of confusion or misunderstanding as to the source sponsorship, approval or certification of Defendant's goods and services; and (b) create a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection or association with or certification by Spark, in violation of 6 Del. C. § 2532.

86.    Defendant's actions, as described above, involve a horizontal business or trade interest because Spark and defendant are direct competitors.

87.    Spark has been damaged and will continue to be damaged by Defendant's deceptive trade practices and is entitled to treble damages and attorneys' fees pursuant to 6 Del. C. § 2533.

## SIXTH CLAIM FOR RELIEF
### (Delaware Common Law Trademark Infringement and Unfair Competition)

88.    Spark realleges and incorporates by reference the foregoing paragraphs of this Complaint as though set forth fully herein.

89.    Defendant's use of "SPARK" and "SPARK"-related marks as complained of above capitalizes upon and trades upon, and is intended to capitalize upon and trade upon, the goodwill and reputation of Spark and the SPARK Marks.

90.    Spark owns and enjoys common-law rights in Delaware and throughout the United States in SPARK Marks for use in connection with biopharmaceutical products and services, which are superior to any rights that defendant may claim in "SPARK" and "SPARK"-related

marks in any form or style with respect to the provision of information on genetic diseases and the provision of gene therapy.

91.     Defendant's marketing, promotion, offering for sale, and sale of goods under "SPARK" and "SPARK"-related marks constitute trademark infringement and unfair competition under the common law of the State of Delaware.

92.     As a result of defendant's conduct, the public is likely to believe that defendant's services have originated from and/or have been approved by SPARK, when they have not.

93.     Defendant's unauthorized use or confusing imitation of SPARK Marks in connection with the promotion of education for genetic diseases and gene therapy, is a knowing, willful, and intentional violation of Spark's common-law rights, demonstrating bad-faith intent to trade on the goodwill associated with SPARK Marks.

94.     Defendant's acts of unfair competition complained of herein have caused irreparable injury and damage to Spark. In addition, upon information and belief, Defendant's actions will cause Spark to lose income, profits, and goodwill while defendant acquires income, profits, and/or goodwill. Defendant's infringement diminishes the value of the SPARK Marks, and Spark's goodwill and business reputation.

95.     For this unfair competition, Spark is entitled to injunctive relief; damages, including but not limited to defendant's profits, actual damages suffered by Spark, and punitive damages; and attorneys' fees, costs, and interest.

## PRAYER FOR RELIEF

WHEREFORE, Spark respectfully requests that the Court grant judgment for Spark and against defendant, as follows:

A.     Find and decree that defendant has infringed and diluted, and continues to infringe and dilute, the SPARK Marks;

B.      Preliminarily and permanently enjoin defendant, and each of its officers, agents, servants, employees, parents, subsidiaries, affiliates, and attorneys, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from continuing to infringe the SPARK Marks;

C.      Order defendant to pay damages for the infringement of the SPARK Marks, together with interest and costs;

D.      Order defendant to cease all use of and transfer to Spark the sparksicklecellchange.com domain name along with any other domain name(s) containing "SPARK" owned by defendant;

E.      Order defendant to expressly abandon its trademark applications for marks containing "SPARK" in the U.S. Patent and Trademark Office;

F.      Enter judgment that Defendant's acts constitute dilution in violation of 6 Del. C. § 3313;

G.      Enter judgment that Defendant's acts constitute deceptive trade practices in violation of 6 Del. C. § 2532 and unfair competition under Delaware common law;

H.      Enter a judgment that Defendant's acts in violation of 6 Del. C. § 2532 have been willful.

I.      Enter a preliminary and permanent injunction enjoining defendant and its agents; representatives, employees, assigns, and all persons acting in concert or privity with it, from engaging in conduct that constitutes dilution under 6 Del. C. § 3313, deceptive trade practices under 6 Del. C. § 2532 or unfair competition under Delaware common law;

J.      Find that this is an exceptional case and award Spark its attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 6 Del. C. § 2533;

K.    Award statutory damages under 15 U.S.C. § 1117(d); and

L.    Award Spark such further relief as this Court deems just and proper.

## JURY DEMAND

Spark Therapeutics, Inc. hereby demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury of all issues so triable.

Dated:   May 17, 2021                        Respectfully submitted,

*/s/ Beth Moskow-Schnoll*
Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 N. Market St, 11th Floor
Wilmington, DE  19801-3034
Tel.: 302-252-4447
Email: moskowb@ballardspahr.com

Robert R. Baron, Jr. (*pro hac vice* to be filed)
Thomas J. Gallagher (pro hac vice to be filed)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.: 215-665-8500
Email: baron@ballardspahr.com
        gallaghert@ballardspahr.com

Susan A. Smith (*pro hac vice* to be filed)
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel.: 202-661-2247
Email: smiths@ballardspahr.com

*Attorneys for Plaintiff Spark Therapeutics, Inc.*