**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPARK THERAPEUTICS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 21-705-LPS |
| | : |
| BLUEBIRD BIO, INC., | : **ORAL ARGUMENT REQUESTED** |
| | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Dated: August 6, 2021

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 N. Market St, 11th Floor
Wilmington, DE  19801-3034
Tel.: 302-252-4447
Email: moskowb@ballardspahr.com

Robert R. Baron, Jr. (*pro hac vice*)
Thomas J. Gallagher, IV (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia , PA 19103-7599
Tel.:  215-864-8500
Email: baron@ballardspahr.com
        gallaghert@ballardspahr.com

Susan A. Smith (*pro hac vice*)
BALLARD SPAHR LLP
190 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel.:  202-661-2247
Email: smiths@ballardspahr.com

Maxwell C. Preston (*pro hac vice*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel.: 646-346-8004
Email: prestonm@ballardspahr.com

*Attorneys for Plaintiff Spark Therapeutics, Inc.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 1

    A.  The SPARK® Trademark ..................................................................................... 1

    B.  Bluebird's Misappropriation of the SPARK Mark ............................................. 3

III. ARGUMENT ................................................................................................................ 6

    A.  Spark is Likely to Succeed on the Merits of Its Delaware Dilution Claim ........... 6

        1.  The SPARK Mark Is Inherently Distinctive ................................................. 7

        2.  Bluebird's "SPARK" Campaign Is Likely to Dilute the SPARK
            Mark ............................................................................................................ 7

    B.  Spark is Likely to Succeed on the Merits of Its Lanham Claims ........................... 9

        1.  The SPARK Mark Is Valid and Legally Protectable ................................. 10

        2.  Bluebird's "SPARK" Campaign Is Likely to Cause Confusion ............... 11

        3.  Bluebird's Assertion of Fair Use Is Demonstrably False ......................... 17

    C.  Irreparable Harm Is Presumed ........................................................................... 18

    D.  The Balance of the Hardships Tips Decidedly in Spark's Favor ......................... 19

    E.  Public Interest Favors Granting Spark's Preliminary Injunction ........................ 20

    F.  No More Than a Nominal Bond Is Needed in View of the Limited
        Injunction ........................................................................................................... 20

IV. CONCLUSION ........................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt.*,
  793 F.3d 313 (3d Cir. 2015)....................................................................................9, 10, 11

*AstraZeneca AB v. Dr. Reddy's Labs., Inc.*,
  145 F. Supp. 3d 311 (D. Del. 2015).......................................................................19

*Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc.*,
  669 F.Supp. 1297 (E.D. Pa. 1987) ........................................................................13

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
  930 F.2d 1056 (3d Cir. 1991).................................................................................12

*Deere & Co. v. MTD Prods.*,
  41 F.3d 39 (2d Cir. 1994)....................................................................................8, 19

*Feathercombs, Inc. v. Solo Prods. Corp.*,
  306 F.2d 251 (2d Cir. 1962)...................................................................................18

*Fisons Horticulture, Inc. v. Vigoro Indus.*,
  30 F.3d 466 (3d Cir. 1994).........................................................................12, 13, 15

*Ford Motor Co. v. Summit Motor Prods.*,
  930 F.2d 277 (3d Cir. 1991).........................................................................10, 11, 16

*Groupe SEB United States, Inc. v. Euro-Pro Operating LLC*,
  774 F.3d 192 (3d Cir. 2014)...................................................................................19

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013)...................................................................................18

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004).......................................................................... *passim*

*Lazzaroni USA Corp. v. Steiner Foods*,
  2006 U.S. Dist. LEXIS 20962 (D.N.J. Apr. 10, 2006) .........................................18

*Matal v. Tam*,
  137 S. Ct. 1744 (2017)............................................................................................15

*Morgenstern Chem. Co. v. G. D. Searle & Co.*,
  253 F.2d 390 (3d Cir. 1958)...................................................................................20

*Mortg. Elec. Registration Sys. v. Brosnan*,
  2009 US. Dist. LEXIS 87596 (N.D. Cal. Sep. 4, 2009) ........................................14

*Nabisco, Inc. v. PF Brands, Inc.*,
  50 F. Supp. 2d 188 (S.D.N.Y. 1999), *aff'd*, 191 F.3d 208 (2d Cir. 1999) ..............18

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990) ..........................................................................9, 12, 16

*PB Brands, LLC v. Patel Shah Indian Grocery*,
  2008 U.S. Dist. LEXIS 50356 (D.N.J. June 27, 2008) ........................................16

*Plus Prods. v. Nat. Organics, Inc.*,
  1984 U.S. Dist. LEXIS 19801 (S.D.N.Y. Feb. 3, 1984) ......................................17

*Sabinsa Corp. v. Creative Compounds, LLC*,
  609 F.3d 175 (3d Cir. 2010) .................................................................... *passim*

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
  453 F. Supp. 2d 834 (D. Del. 2006) ......................................................... *passim*

*Three Rivers Confections, LLC v. Warman*,
  660 Fed. Appx. 103 (3d Cir. 2016) ......................................................................10

*Times Mirror Magazines Inc. v. Las Vegas Sports News*,
  212 F.3d 157 (3d Cir. 2000) ................................................................................18

*Treasury Mgmt. Servs. v. Wall St. Sys. Del.*,
  2017 U.S. Dist. LEXIS 68656 (D. Del. May 5, 2017) ........................................7, 9

*USPTO v. Booking.com B.V.*,
  140 S. Ct. 2298 (2020) ..........................................................................................7

**Statutes**

6 Del. C. § 3313 .............................................................................................................6, 7

15 U.S.C. § 1114 ...............................................................................................................9

15 U.S.C. § 1115 ........................................................................................................10, 17

15 U.S.C. § 1116 .............................................................................................................18

15 U.S.C. § 1125 ...............................................................................................................9

**Other Authorities**

1 GILSON ON TRADEMARKS §§ 2.05, 2.06 (2021) ............................................................7

1 TRADEMARK AND UNFAIR COMPETITION DESKBOOK § 10.02 (2021) ..........................9

2 GILSON ON TRADEMARKS § 5A.02 (2021) ................................................................9

3 GILSON ON TRADEMARKS § 12.04 (2021) ................................................................8

FED. R. CIV. P. 65(c) .............................................................................................20

## I.     INTRODUCTION

Spark Therapeutics, Inc. ("Spark") seeks to preliminarily enjoin Bluebird Bio, Inc. ("Bluebird") from using Spark's federally registered trademark SPARK®. Both Spark and Bluebird develop gene therapies for rare inherited blood disorders, and the companies are well known to each other. Bluebird nonetheless adopted the SPARK mark as the focal point of its promotional campaign about a rare inherited blood disorder and applied to register a family of SPARK trademarks. The audience for this campaign is the very same group of doctors familiar with Spark's gene therapies. These doctors will either make a mental association with Spark, which constitutes dilution of the SPARK trademark, or will be confused into thinking there actually is an association, which constitutes trademark infringement. Bluebird's campaign must be edited to remove the SPARK mark pending trial; otherwise, the very harm Spark seeks to prevent will have already occurred.

## II.    BACKGROUND

### A.     The SPARK® Trademark

Spark has used SPARK as its trade name and trademark since 2013. Philip Dec. ¶ 11. Spark is a globally-recognized biotechnology company specializing in research and development of groundbreaking gene therapies for a range of inherited genetic diseases, including the blood disorder hemophilia. *Id.* ¶ 7. In 2017, Spark became the first company to receive FDA approval for a gene therapy for an inherited disease, and one that has been proven to restore vision in patients with the disease. Levy Dec. ¶ 7. The SPARK name and mark received extensive publicity as a result of this breakthrough. *See, e.g.*, Exs. C-E.

Spark owns U.S. Trademark Registration No. 5,068,997 for the mark SPARK for "biologic preparations for use in the diagnosis and treatment of retinal degenerative and hematologic disorders and diseases" in International Class 5. Ex. A. Spark also owns U.S. Registration No.

6,404,122 for the mark SPARKMEDICAL.COM for various educational goods and services pertaining to gene therapy. *Id.* Spark also owns a family of SPARK marks, either applied for or registered with the USPTO, including SPARK THERAPEUTICS, SPARK PATH, and SMARTT SPARK MARKET ACCESS & REIMBURSEMENT THINK TANK. *Id.* Through hard work, great science, and substantial investment, the SPARK name and trademarks (collectively the "SPARK mark") have become synonymous with Spark's innovative gene therapies and educational outreach programs for patients suffering from genetic disease. Philip Dec. ¶¶ 6-26.

One of Spark's primary areas of focus is hemophilia, a rare inherited blood disorder. Levy Dec. ¶ 17. Spark works with hematology-oncologists around the United States and the world to recruit patients and conduct clinical trials for its therapies to treat patients with Hemophilia A. Levy Dec. ¶ 8. As a result, hematologists across the world are familiar with Spark, as are many other doctors treating patients with diseases that can be treated by gene therapies. *See* Philip Dec. ¶ 22; Levy Dec. ¶¶ 8-9; *see also* McDonald Rpt.[1] ¶¶ 2, 24.

For years, Spark has made extensive use of its SPARK mark in connection with promoting education and cutting-edge science to physicians, scientists, and other healthcare professionals. Philip Dec. ¶ 26; Levy Dec. ¶¶ 9-10. Spark annually presents at and/or attends the premier U.S. meeting of hematology-oncologists, where scientists discuss the latest research in hematological disorders such as hemophilia and sickle cell. Levy Dec. ¶ 9. Spark prominently displays its SPARK mark at this conference (and other conferences attended by hematology-oncologists), including Spark-sponsored educational symposia and informational booths. *Id.* ¶¶ 9-10. Spark participates in and extensively displays the SPARK mark in connection with other conferences for blood

---

[1]     "McDonald Rpt." refers to the Expert Report of Susan McDonald, PhD, dated July 30, 2021, attached as Exhibit F to the Declaration of Thomas J. Gallagher, IV in Support of Plaintiff's Motion for Preliminary Injunction, dated August 2, 2021.

disorders, and retinal and neurodegenerative diseases. *Id.* ¶ 10.

Accordingly, the SPARK mark is well known to those treating blood disorders (including hemophilia and sickle cell disease), such as hematology-oncologists, internal medicine physicians, pediatricians, nurses, and other caregivers who work in these fields. Philip Dec. ¶ 22; Levy Dec. ¶¶ 8-11; *see also* McDonald Rpt. ¶ 24. The reputation and goodwill associated with the SPARK mark is of immense value to Spark. Philip Dec. ¶ 23; *see also* McDonald Rpt. ¶ 51.

**B.     Bluebird's Misappropriation of the SPARK Mark**

Like Spark, Bluebird is a gene therapy company with a focus on blood disorders. Levy Dec. ¶¶ 24-25. As a company operating in the same field, Bluebird is well aware of Spark. Philip Dec. ¶ 27. Bluebird and Spark regularly cross paths in the industry. *Id.* Bluebird's SEC filing recognized that "Spark's gene therapy product" was one of "only a few gene therapy products [to] have been approved in the Western world." Ex. G. It has been well-publicized that both Spark and Bluebird are working on gene therapies for blood disorders. Exs. C-E, H.

Bluebird nonetheless appropriated Spark's mark to form its SPARK campaign. *See* Exs. I-M. The use of SPARK permeates Bluebird's campaign website, appearing in slogans such as "Be the SPARK," "Let's Spark Change in Sickle Cell," "Sign Up to Be the Spark," and "Be the Spark for Better Care in Sickle Cell," and in the website's URL: sparksicklecellchange.com. See Ex. I. Indeed, the SPARK mark is displayed far more prominently than the BLUEBIRD mark. *See* Ex. I; *see also* McDonald Rpt. ¶ 27. The SPARK mark is the obvious focus of Bluebird's campaign:




Exs. J and K. At times Bluebird even uses SPARK alone, for example, in a video on its website and YouTube that repeatedly depicts SPARK alone in gold, before fading in less-emphasized words:



*See* Exs. L and M.

Bluebird has gone so far as to assert trademark rights in SPARK. The upper left-hand corner of its website, for example, depicts a logo in which SPARK is the most prominent feature and bears a TM symbol asserting trademark rights. *See* Ex. I. Bluebird has also filed trademark applications for SPARK marks: BE THE SPARK, I AM THE SPARK, SPARK CHANGE, and SPARK ACTION. Ex. B. These applications designate the same types of services that Spark provides under the SPARK mark, namely educational services and patient advocacy related to treatment options for genetic disorders. *Id.* Indeed, Bluebird's application for I AM THE SPARK broadly identifies "Educational activities and services related to ***gene therapy***" without limitation to any specific disease states. *Id.*

Bluebird's campaign targets physicians in addition to patients. Bluebird's "Change for SCD" website, which includes the SPARK mark "is intended for use by U.S. healthcare professionals." *See* Ex. N. Similarly, Bluebird's "Be the SPARK" website is directed to "caregivers" of those with sickle cell. *See* Ex. I; *see also* McDonald Rpt. ¶¶ 29, 38-40.

Spark and Bluebird target the same consumers, namely, medical professionals who specialize in blood disorders. As discussed, one of Spark's areas of focus is the blood disorder

hemophilia. *Supra* at 2. Bluebird's SPARK campaign also concerns a blood disorder – sickle cell disease – for which Bluebird is developing a gene therapy treatment. *See* Ex. I; Levy Dec. ¶ 24. Hematologists who treat patients with hemophilia also treat patients with sickle cell disease. Levy Dec. ¶ 14; *see also* McDonald Rpt. ¶¶ 29-30. As a result, hematologists are aware of treatments being developed for both diseases, such as those being developed by Spark and Bluebird. Levy Dec. ¶ 14; *see also* McDonald Rpt. ¶ 30. In short, Bluebird has chosen Spark's exact mark in the exact field in which Spark is a prominent leader—gene therapies for rare inherited blood disorders. Philip Dec. ¶ 25; Levy Dec. ¶¶ 17-19, 24-25, 27; *see also* McDonald Rpt. ¶¶ 23-24, 26.

Bluebird's gene therapies have been dogged by safety and other regulatory issues that negatively impact Bluebird's reputation. The FDA put a hold on Bluebird's clinical trials for its sickle cell gene therapy after two participants were diagnosed with cancer and a cancer-like condition. Ex. O; Levy Dec. ¶ 29. FDA-imposed clinical holds, even if eventually lifted, are serious events that significantly affect a company's reputation for safety and/or efficacy. Levy Dec. ¶ 22; *see also* McDonald Rpt. ¶ 43. After a clinical hold, physicians are more hesitant to prescribe a treatment, patients are more hesitant to seek that treatment or volunteer for clinical trials, and investors are more hesitant to invest. Levy Dec. ¶ 22; Philip Dec. ¶ 32. Additionally, Bluebird removed certain therapies from European markets after disputes with European regulators. Ex. P. Any association between Spark and Bluebird will thus harm the reputation of Spark and its SPARK mark. *See, e.g.*, McDonald Rpt. ¶ 43.

To be clear, Spark supports Bluebird's outreach to those affected by sickle cell disease. In its Answer, Bluebird disingenuously claims that Spark is "seeking to end the 'Be the Spark' campaign" and "harm the SCD community, which is prominently African American." *See* Dkt. 13 ¶ 11. These inflammatory claims are false and in direct contradiction to Spark's clear statements

in its complaint that it seeks only a removal of the SPARK mark from the campaign, not a "shut down" as Bluebird disingenuously claims for dramatic effect. *See* Dkt. 1. Indeed, Spark's proposed preliminary injunction order only seeks to end Bluebird's infringement, not Bluebird's campaign.

Spark made every effort to avoid filing this motion. After filing its Complaint, Spark repeatedly reached out to Bluebird. Similarly, after Bluebird filed its Answer and Counterclaims, Spark again reached out to Bluebird. Spark's last call with Bluebird was on August 2, 2021. At this point, Spark believes that it has no choice but to file this motion. Spark cannot wait until resolution by trial given the ongoing dilution of its house mark and confusion in the marketplace.

## III.   ARGUMENT

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Here, all factors strongly support Spark's motion.

### A.   Spark is Likely to Succeed on the Merits of Its Delaware Dilution Claim

Spark seeks relief under the Delaware Trademark Act ("DTA"). Under the DTA, "[l]ikelihood of injury to business reputation or dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties, or the absence of confusion as to the source of goods or services." 6 Del. C. § 3313. Unlike dilution under the Lanham Act, Delaware's dilution statute does not require that a mark be "famous." Rather, all that is required is: (1) that the mark be distinctive; and (2) that there be a likelihood of dilution. *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 855 (D. Del. 2006). Here, there can be no reasonable dispute that both requirements are met.

1.     The SPARK Mark Is Inherently Distinctive

Arbitrary marks—which "neither describe nor suggest anything about the product" (*Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 185 (3d Cir. 2010))—are inherently distinctive. *USPTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2303 (2020). Inherently distinctive marks satisfy the DTA's distinctiveness requirement. *See Sanofi-Aventis*, 453 F. Supp. 2d at 855.

Spark's SPARK mark is arbitrary and, thus, inherently distinctive. SPARK bears no logical connection to Spark's products and services for which the mark is registered or used (or more generally to gene therapy, biopharmaceuticals, hematology, or hematological diseases). See *Sabinsa Corp.*, 609 F.3d at 185. Indeed, the USPTO granted Spark's application to register SPARK on the Principal Register without requiring any demonstration of acquired distinctiveness (Ex. A), which creates a presumption that the mark is inherently distinctive. 1 GILSON ON TRADEMARKS §§ 2.05[2], 2.06[5] & n.39-40 (2021) (citing cases).

2.     Bluebird's "SPARK" Campaign Is Likely to Dilute the SPARK Mark

"In order to prevail on a claim brought pursuant to the DTA, a plaintiff must demonstrate that there is a likelihood of dilution, not actual dilution." *Sanofi-Aventis*, 453 F. Supp. 2d at 855. "Likelihood of dilution requires some mental association between the marks and can be defined as [1] a blurring of a mark's product identification or [2] the tarnishment of the affirmative associations a mark has come to convey." *Treasury Mgmt. Servs. v. Wall St. Sys. Del.*, 2017 U.S. Dist. LEXIS 68656, at *12 (D. Del. May 5, 2017) (quoting *Sanofi-Aventis*, 453 F. Supp. 2d at 855). As discussed below, Bluebird's campaign creates a likelihood of dilution because Bluebird's use of SPARK cannot help but create a mental association with Spark in this small community of doctors treating rare blood disorders with gene therapy.

7

a.     *Dilution by Blurring*

Blurring occurs where a plaintiff's mark "lose[s] its ability to serve as a unique identifier of" the plaintiff's goods or services, as a result a defendant's use of the mark to identify its own goods and services. *Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994); *see also* 3 GILSON ON TRADEMARKS § 12.04 (2021). As described in detail above, the SPARK mark is well-known to physicians treating rare blood disorders, the very same doctors to which Bluebird's SPARK campaign is directed. Before seeing Bluebird's SPARK campaign, SPARK was a unique source-identifier for Spark in the eyes of those physicians. After seeing Bluebird's SPARK campaign, SPARK now represents two different companies, which weakens and dilutes the SPARK mark.

Specifically, Bluebird is using SPARK—with other words and alone—as the focal point of a campaign related to gene therapies for rare inherited blood disorders. *Supra* at 3-4; *see also* McDonald Rpt. ¶¶ 26-28. Bluebird and Spark target the same consumers, namely, medical professionals who specialize in blood disorders. *Supra* at 4-5; *see also* McDonald Rpt. ¶¶ 29-30. Indeed, Bluebird directly targets hematologists and other healthcare providers with its SPARK campaign via its changeforscd.com website, which includes a brochure featuring SPARK marks, and further invites doctors to visit Bluebird's sparksicklecellchange.com, which is replete with uses of SPARK. *See* Ex. N; *see also* McDonald Rpt. ¶ 39.

The likelihood of dilution is particularly high in this case given the degree of consumer awareness and the prominence of the SPARK mark. Medical professionals who specialize in blood disorders are closely familiar with Spark's groundbreaking work and also follow developments in the field. *See supra* at 2-5; *see also* McDonald Rpt. ¶¶ 24, 30. Such attentive professionals are likely to learn of Bluebird's SPARK campaign and make a mental association with SPARK. *Sanofi-Aventis*, 453 F. Supp. 2d at 855. Such association will cause the SPARK mark to "lose its ability to serve as a unique identifier." *Deere*, 41 F.3d at 43; *see also* McDonald Rpt. ¶¶ 4, 41-42,

51. In other words, Bluebird's SPARK campaign will cause Spark's SPARK mark to suffer a "'gradual diminution of the mark's distinctiveness, effectiveness and, hence, value" – a classic case of blurring. 1 Trademark and Unfair Competition Deskbook § 10.02 (2021) (citation omitted).

> b.     *Dilution by Tarnishment*

Tarnishment occurs when the good reputation and commercial value of a plaintiff's trademark is diminished by negative associations through the defendant's use of the mark. *See Treasury Mgmt. Servs.*, 2017 U.S. Dist. LEXIS 68656, at *12 (quoting *Sanofi-Aventis*, 453 F. Supp. 2d at 855)); *see also* 2 GILSON ON TRADEMARKS § 5A.02 (2021); 1 Trademark and Unfair Competition Deskbook § 10.02 (2021). Bluebird's gene therapies are associated with serious safety and regulatory concerns that negatively influence Bluebird's reputation. *Supra* at 5. Bluebird's use of the SPARK mark is likely to carry these negative associations through to Spark, which damages the messages of prestige and quality previously communicated by the SPARK mark, resulting in dilution by tarnishment. Levy Dec. ¶ 23; *see also* McDonald Rpt. ¶¶ 43, 50.

> **B.     Spark is Likely to Succeed on the Merits of Its Lanham Claims**

The Lanham Act provides a remedy for infringement of a registered trademark under 15 U.S.C. § 1114(a) and for unfair competition under 15 U.S.C. § 1125(a). The standard for infringement is the same: "the owner of a valid and legally protectable mark . . . must show that a defendant's use of a similar mark for its goods 'causes a likelihood of confusion.'" *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt.*, 793 F.3d 313, 319 (3d Cir. 2015) (citation omitted). Thus, these claims have two elements: (1) ownership of a valid trademark; and (2) a showing that the defendant's use of the mark is likely to cause consumer confusion. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

The Lanham Act extends beyond "confusion of products" to "confusion, mistake, or deception *of any kind*, not merely of purchasers nor simply as to source of origin." *Id.* at 322

(quoting *Kos*, 369 F.3d at 711). "It certainly covers confusion created 'in the minds of persons in a position to influence [a] purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner.'" *Id.* at 323.

Bluebird's use of the SPARK mark for a campaign directed to physicians already well-familiar with the SPARK brand is likely to cause confusion in the marketplace. For example, given that partnerships are common in the medical field (such as Pfizer and BioNTech), physicians may believe that Spark and Bluebird have banded together to apply Spark's breakthrough gene therapy to another blood disorder – sickle cell disease. As another example, given the commonplace corporate mergers in the medical field, physicians may believe that Spark and Bluebird are now related companies. Put another way, physicians are *not* likely to believe that Bluebird's choice of the well-known SPARK brand was coincidental and unrelated.

### 1.    The SPARK Mark Is Valid and Legally Protectable

Ownership of a federal registration is *prima facie* evidence "of the validity of the registered mark[,] . . . the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a); *Three Rivers Confections, LLC v. Warman*, 660 Fed. Appx. 103, 106 (3d Cir. 2016). Here, there is no dispute that Spark owns U.S. Federal Registration No. 5,068,997 for SPARK. Ex. A. Moreover, as discussed above, the SPARK mark is inherently distinctive. *Supra* at 7; *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 291 (3d Cir. 1991) ("validity depends on proof of secondary meaning, unless the . . . contestable mark is inherently distinctive"). The same analysis also applies to Spark's U.S. Federal Registration No. 6,404,122 for SPARKMEDICAL.COM. Additionally, SPARK and the SPARK family of marks (which are the subject of several additional trademark registrations or pending trademark applications) are valid and legally protectable based on Spark's continuous use in commerce such that the SPARK

marks are well known among healthcare practitioners who treat blood disorders. *See supra* at 1-3. "[T]he first party to adopt [an unregistered] trademark can assert ownership rights, provided it continuously uses it in commerce." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991); *see also supra* at 1-3.

### 2.   Bluebird's "SPARK" Campaign Is Likely to Cause Confusion

The Third Circuit has prescribed a non-exhaustive list of ten factors to evaluate the likelihood of confusion, commonly called the *Lapp* factors: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the care exercised by consumers; (4) the length of time defendant has used the mark without evidence of actual confusion; (5) defendant's intent in adopting its mark; (6) evidence of actual confusion; (7) similarity of trade and marketing channels; (8) similarity of the target markets; (9) similarity of the goods and services; and (10) other facts suggesting a likelihood to expand into in the defendant's market. *Arrowpoint*, 793 F.3d at 319.

#### a.   *The SPARK Mark Is Conceptually and Commercially Strong*

"'Under the Lanham Act, stronger marks receive greater protection' because they 'carry greater recognition, [so that] a similar mark is more likely to cause confusion.'" *Kos*, 369 F.3d at 715. "To determine the strength of the mark, courts look to (1) the inherent features of the mark contributing to its distinctiveness or conceptual strength and (2) the factual evidence of the mark's commercial strength or of marketplace recognition of the mark." *Sabinsa*, 609 F.3d at 184-85.

The SPARK mark is conceptually strong because it is inherently distinctive for the reasons previously discussed. *Supra* at 7; *see also Sabinsa*, 609 F.3d at 185; *Sanofi-Aventis*, 453 F. Supp. 2d at 850. As an arbitrary mark, it is "entitled to a high level of protection." *Sanofi-Aventis*, 453 F. Supp. 2d at 850. Further, the SPARK mark is commercially strong as a result of Spark's success and renown in the gene therapy sector, discussed above. *See supra* at 1-3. The FDA's approval of SPARK's LUXTURNA® gene therapy, the *first* directly administered gene therapy approved in

the U.S., was a widely-heralded breakthrough in the medical community. *See supra* at 1. As a result of Spark's work on hemophilia, the SPARK mark is particularly strong in the blood disorder field, the same field to which Bluebird's campaign is directed. *See supra* at 1-3; *see also* McDonald Rpt. ¶¶ 23-24, 26, 29. This factor accordingly favors Spark.

           b.     *The Marks At Issue Feature SPARK*

"The single most important factor in determining likelihood of confusion is mark similarity." *Sabinsa*, 609 F.3d at 183 (citation and quotations omitted). "The proper test is . . . 'whether the [marks] create the same overall impression" (judged by "sight, sound, and meaning") "when viewed separately." *Id*. Bluebird is using the identical mark:



*Supra* at 3-4. The Third Circuit has held that "likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities." *Opticians*, 920 F.2d at 195.

Bluebird also uses, and has applied to register, the SPARK mark as the dominant portion of other marks, such as BE THE SPARK and I AM THE SPARK. Even if not identical, confusion is likely when "the dominant portions of the two marks are the same." *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991). "A subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-descriptive matter to it." *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 477 (3d Cir. 1994) (citation omitted).

SPARK is plainly dominant in Bluebird's SPARK campaign, as it sets the theme for the entire campaign through repetitive use, unique font (*e.g.*, glittering gold), and large typeface. *See*

*supra* at 3-4. The words added are subordinate to the dominant SPARK mark and do nothing to change the commercial impression of Bluebird's SPARK campaign. *See Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc.*, 669 F.Supp. 1297, 1320 (E.D. Pa. 1987) (holding that the "addition of the subordinate and miniscule word 'Club' [to the mark CARNIVAL] does not serve to distinguish [defendant's] mark" from plaintiff's CARNIVAL mark). Accordingly, this factor favors Spark.

       c.     *Similarity of Products and Services / Expansion to Other Markets*

"The closer the relationship between the products [or services], . . . the greater the likelihood of confusion." *Kos*, 369 F.3d at 722 (citation omitted). The question is "whether, and to what extent, the products seem related," and "'whether buyers and users of each parties' goods [or services] are likely to encounter [those] of the other, creating an assumption of common source[,] affiliation or sponsorship.'" *Id.* at 723 (citation omitted); *see also Fisons*, 30 F.3d at 481 (asking "whether the consumer might therefore reasonably conclude that one company would offer both of these related products"). Similarly, in considering likelihood of expansion, the Court may consider "the nature of the products or the relevant market, . . . or any other circumstances that bear on whether consumers might reasonably expect both products to have the same source," such as the parties' expertise and the "specialized and technical nature" of field at issue *See id.* at 724.

Here, the goods and services at issue are highly similar. Both Spark and Bluebird are developing gene therapies for rare inherited blood disorders. Levy Dec. ¶¶ 17-19, 24-25, 28, 31; *supra* at 2-3, 5. In its Answer, Bluebird repeatedly makes the distinction that it uses SPARK in association with sickle cell disease and Spark does not. This distinction is irrelevant given that Spark uses SPARK in association with other inherited blood disorders, such as hemophilia, which are treated by the same doctors, as discussed in the next section. In any event, Spark has in the past looked into and continues to consider developing or acquiring a gene therapy treatment designed

13

to treat sickle cell disease. Levy Dec. ¶ 31.

The intended uses identified in Bluebird's application to register I AM THE SPARK further highlight the similarity of product/services. *See Mortg. Elec. Registration Sys. v. Brosnan*, 2009 US. Dist. LEXIS 87596, at *15-16 (N.D. Cal. Sep. 4, 2009)(Where a defendant has represented to the USPTO its intent to use a mark in a certain way, that representation may be considered.). Bluebird's application focuses on "promotional activities" relating to awareness of "diseases and disease states" and "educational activities and service related to gene therapy." Ex. B. Spark has long used its marks in connection with promoting awareness of diseases and disease states and in connection with "educational activities and services related to gene therapy." *See supra* at 1-3. Indeed, Spark's SPARK mark is registered for use with "biologic preparations for use in the diagnosis and treatment of . . . diseases" (Ex. A), and raising awareness and educating consumers are integrally related to the marketing and sales of such therapies. Additionally, Spark's SPARKMEDICAL.COM mark is registered for educational services specifically: "[e]ducational materials . . . pertaining to gene therapy research and products"; "[p]roviding information and a website regarding medical resources in the field of gene therapy and medical information"; and "providing a website featuring educational information in the field of gene therapy." *Id.* Accordingly, these factors weigh in Spark's favor.

> d.    *Targets of the Parties' Efforts / Similarity of Marketing Channels*

The likelihood of confusion is increased "when parties target their sales efforts to the same group of consumers," and when there is "similarity in advertising and marketing campaigns." *Sabinsa*, 609 F.3d at 188. Spark and Bluebird target the same group of consumers – medical professionals who specialize in rare blood disorders (hematologists). *Supra* at 2-5; *see also* McDonald Rpt. ¶ 29. Spark and Bluebird also employ similar marketing campaigns – Internet-based educational campaigns promoting the use of gene therapy for rare inherited blood disorders.

14

*Supra* at 1-5; *see also* McDonald Rpt. ¶¶ 24, 29, 31, 33. Such overlap of targets and marketing will naturally lead to an "assumption of common source affiliation or sponsorship." *Kos*, 369 F.3d at 723. Accordingly, these factors weigh in Spark's favor.

### e.  Bluebird's Intent in Adopting and Using "SPARK"

"The adequacy and care with which a defendant investigates and evaluates its proposed mark, and its knowledge of similar marks or allegations of potential confusion, are highly relevant" to finding a likelihood of confusion. *Kos*, 369 F.3d at 721. This inquiry extends beyond asking whether a defendant purposely chose its mark to "promote confusion and appropriate the prior user's good will," and may turn on whether a defendant was "careless in its evaluation of the likelihood of confusion." *Fisons*, 30 F.3d at 479-80.

Bluebird undeniably was aware of Spark, yet, out of all of the words in the English language, Bluebird chose the name and primary trademark of Spark, a prominent leader in its own field. *Supra* at 3-5; *see also* McDonald Rpt. ¶¶ 24, 26-28. In addition to actual knowledge, Bluebird had constructive knowledge of Spark's federal trademark registration for SPARK. *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017). In such circumstances, Bluebird either acted purposely or in reckless disregard of Spark's rights when making SPARK the focal point of its campaign. *See, e.g.*, McDonald Rpt. ¶¶ 28, 49. This factor weighs in favor of Spark.

### f.  Sophistication of Consumers

Consumer sophistication weighs against a likelihood of confusion "when consumers exercise heightened care in evaluating the relevant products before making purchasing decisions." *Kos*, 369 F.3d at 717. Here, however, "[t]here is no reason to believe that [physicians'] medical expertise as to products will obviate confusion as to source or affiliation or other factors affecting goodwill." *Kos*, 369 F.3d at 717; *see* McDonald Rpt. ¶ 47. To the contrary, the target audience of medical professionals here is accustomed to partnerships among, and mergers and acquisitions

15

between, drug companies. Physicians cannot be considered "sophisticated" in terms of corporate relationships, and thus are prone to be misled as to affiliation when Bluebird uses Spark's name and house brand. *See id*. This factor weighs in favor of Spark.

> g.    *Length of Use Without Confusion / Evidence of Actual Confusion.*

"Proof of actual confusion is not necessary; likelihood is all that need be shown." *Ford Motor*, 930 F.2d at 292 (quoting *Opticians*, 920 F.2d at 195). "[E]vidence of actual confusion 'is difficult to find . . . because many instances are unreported.'" *Kos*, 369 F.3d at 720. Moreover, where defendant's infringing use has only taken place over a short period, absence of evidence of actual confusion will result in these factors remaining neutral. *See PB Brands, LLC v. Patel Shah Indian Grocery*, 2008 U.S. Dist. LEXIS 50356, at *31 (D.N.J. June 27, 2008) (defendant used marks for approximately nine months). Bluebird apparently launched its SPARK campaign at some point in 2020, but Spark did not learn of it until recently and has not yet had the opportunity to seek evidence of actual confusion. Philip Dec. ¶ 29. Given the short time period at issue, these factors are neutral.

> h.    *On Balance, the Factors Support a Likelihood of Confusion*

On balance, the *Lapp* factors strongly support Spark. The two "most important factors, mark similarity and mark strength" (*Sabinsa*, 609 F.3d at 189) weigh in Spark's favor. Five other factors similarly weigh in Spark's favor: similarity of trade and marketing channels, targets of the parties' efforts, similarity of products and services, expansion into other markets, sophistication of consumers, and Bluebird's intent. Only two factors are neutral: length of Bluebird's use without confusion, and actual confusion. No factors weigh in Bluebird's favor.

Bluebird's selection of SPARK as the focal point for its campaign, despite the renown of the SPARK mark in the community of companies using gene therapy to treat rare blood disorders, is likely to cause confusion among physicians and others regarding the affiliation of the two

companies and their work. Spark is thus likely to prevail on its Lanham Act claims.

           3.      <u>Bluebird's Assertion of Fair Use Is Demonstrably False</u>

Bluebird asserts that its use of SPARK is descriptive fair use. *See, e.g.*, Dkt. 13 ¶¶ 2, 50-51. But to qualify as fair use, the use must be "otherwise than as a mark" and "descriptive of and used fairly and in good faith only to describe the goods or services of such party". 15 U.S.C. § 1115(b)(4). Bluebird's use of SPARK is none of those things.

First, Bluebird's claim of fair use is simply not credible. Bluebird claims SPARK *as a trademark* on its website by using the TM symbol next to SPARK:



*Supra* at 4; Ex. I. Further, Bluebird has filed numerous trademark applications to register SPARK marks *as trademarks*. *Supra* at 4. After making legal claim to a family of SPARK trademarks in the U.S. Patent and Trademark Office, Bluebird cannot now credibly claim fair use. *See, e.g.*, *Plus Prods. v. Nat. Organics, Inc.*, 1984 U.S. Dist. LEXIS 19801, at *7 (S.D.N.Y. Feb. 3, 1984) ("Defendant sought to register NATURE'S PLUS as a trademark. It cannot now argue that the term is merely descriptive.").

Second, Bluebird is using SPARK as a trademark, not "otherwise than as a mark". For example, Bluebird is featuring SPARK in capital letters, larger font, and glittering gold typeface, not as a lowercase word in a sentence:



*Supra* at 3-4. Further, SPARK is the recurring theme of Bluebird's campaign. *See supra* at 3-4; *Kelly-Brown v. Winfrey*, 717 F.3d 295, 309 (2d Cir. 2013) ("Courts are more likely to treat recurring themes or devices as entitled to protection as a mark, even where a single iteration might not enjoy such protection."). Bluebird's repeated use of SPARK, its prominent display, and its large flashy font, all demonstrate that Bluebird is using SPARK "as an attention-getting symbol, and thus as a mark." *Lazzaroni USA Corp. v. Steiner Foods*, 2006 U.S. Dist. LEXIS 20962, at *13 (D.N.J. Apr. 10, 2006); *see also Kelly-Brown*, 717 F.3d at 308 ("using the term 'as a symbol to attract public attention'").

Finally, Bluebird's use of SPARK is not descriptive of Bluebird's gene therapy business, and Bluebird has no competitive need to use it. Instead, SPARK is completely arbitrary as applied to gene therapy (which is why SPARK is an inherently distinctive mark). And Bluebird cannot credibly argue "good faith" when its own trademark applications betray its intent. *Feathercombs, Inc. v. Solo Prods. Corp.*, 306 F.2d 251, 256 (2d Cir. 1962) (seeking "registration of [a] mark" is "conclusive evidence of [] intent to make a trade-mark use thereof.").

### C.      Irreparable Harm Is Presumed

Having demonstrated a likelihood of success on the merits on its trademark infringement claim, Spark is entitled to a presumption of irreparable harm. 15 U.S.C. § 1116(a). Similarly, under state anti-dilution law "a likelihood of dilution will automatically establish irreparable harm." *Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188, 210 (S.D.N.Y. 1999) (applying New York's anti-dilution law which is substantively identical to Delaware's), *aff'd*, 191 F.3d 208 (2d Cir. 1999); *cf. Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157, 169 (3d Cir. 2000) ("a lack of control over the use of one's own mark" from dilution "amounts to irreparable harm" under the Lanham Act).

Even without the presumption, the irreparable harm in this case is clear – there is no monetary recompense for the dilution of Spark's house brand or confusion in the field. "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos*, 369 F.3d at 726. These grounds cover the harms inherent in infringement, as well as dilution, as they are extremely difficult or impossible to quantify. *See Groupe SEB United States, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204-05 (3d Cir. 2014) ("the harm to SEB's brand reputation and goodwill is impossible to quantify"); *Deere & Co. v. MTD Prods*., 860 F. Supp. 113, 121-22 (S.D.N.Y. 1994) (under New York's anti-dilution law, "[d]ilution is itself an injury which could not be recompensed by money damages" as a result of the reputational harm at issue), *aff'd*, 41 F.3d 39 (2d Cir. 1994); *see also AstraZeneca AB v. Dr. Reddy's Labs., Inc*., 145 F. Supp. 3d 311, 319 (D. Del. 2015) (reputational harm of this sort is "virtually impossible" to calculate). Accordingly, the dilution and infringement in this case cause harm that is impossible to calculate, and far easier to prevent than remedy. *See Groupe SEB*, 774 F.3d at 204-05; *Deere*, 860 F. Supp. at 121-22; *see also* McDonald Rpt. ¶¶ 3-4, 28, 35, 49-51. This harm is, by definition, irreparable.

### D.    The Balance of the Hardships Tips Decidedly in Spark's Favor

When balancing hardships, "[t]he question is whether, and to what 'extent[,]…the defendants will suffer irreparable harm if the preliminary injunction is issued.'" *Kos*, 369 F.3d at 727. Since Spark is only asking that Bluebird edit its websites and social media to exclude the SPARK mark, Bluebird's regular business activities will be unaffected and no irreparable harm is implicated. Furthermore, any harm suffered by Bluebird is self-inflicted – Bluebird had clear knowledge of the SPARK brand, yet carelessly or intentionally made it the focal point of its campaign. The Third Circuit has "often recognized that 'the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.'" *Kos*, 369 F.3d at 728.

19

By contrast, the harm suffered by Spark is irreparable. Spark has no means other than a preliminary injunction to prevent dilution of the SPARK mark and confusion in the marketplace pending trial; otherwise a victory at trial would be a pyrrhic one. The balance of hardships tips in Spark's favor.

### E.    Public Interest Favors Granting Spark's Preliminary Injunction

"[T]he most basic public interest at stake in all [trademark] cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *See Kos*, 369 F.3d at 730. The Third Circuit has held that this public interest would be damaged by allowing use that is likely to cause confusion and would be protected by enjoining such use. *See id.* This principle applies with special force in the healthcare industry. *Morgenstern Chem. Co. v. G. D. Searle & Co.*, 253 F.2d 390, 393 (3d Cir. 1958). It is in the public's interest that doctors and patients be able to identify, research, discuss, and prescribe the appropriate therapy or resource without any potential for confusion, ambiguity, or misplaced negative associations. A preliminary injunction would prevent further dilution and confusion, thereby benefitting the public.

### F.    No More Than a Nominal Bond Is Needed in View of the Limited Injunction

Under Federal Rule of Civil Procedure 65(c), a preliminary injunction order must require the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In this case, an injunction would be limited to Bluebird's editing of two websites and a handful of social media to cease use of SPARK. Bluebird's regular business activities will be unaffected. Thus, a bond in a nominal amount, such as $5,000, is sufficient.

## IV.    CONCLUSION

Spark respectfully requests that the Court grant a preliminary injunction enjoining and restraining Bluebird's dilution and infringement of the SPARK mark pending trial.

Dated:  August 6, 2021                          */s/ Beth Moskow-Schnoll*
                                                Beth Moskow-Schnoll (No. 2900)
                                                BALLARD SPAHR LLP
                                                919 N. Market St, 11th Floor
                                                Wilmington, DE  19801-3034
                                                Tel.: 302-252-4447
                                                Email: moskowb@ballardspahr.com

                                                Robert R. Baron, Jr. (admitted *pro hac vice*)
                                                Thomas J. Gallagher (admitted *pro hac vice*)
                                                BALLARD SPAHR LLP
                                                1735 Market Street, 51st Floor
                                                Philadelphia, PA 19103
                                                Tel.: 215-665-8500
                                                Email: baron@ballardspahr.com
                                                         gallaghert@ballardspahr.com

                                                Susan A. Smith (admitted *pro hac vice*)
                                                BALLARD SPAHR LLP
                                                1909 K Street, NW, 12th Floor
                                                Washington, DC 20006-1157
                                                Tel.: 202-661-2247
                                                Email: smiths@ballardspahr.com

                                                Maxwell C. Preston (admitted *pro hac vice*)
                                                BALLARD SPAHR LLP
                                                1675 Broadway, 19th Floor
                                                New York, NY 10019-5820
                                                Tel.: 646-346-8004
                                                Email: prestonm@ballardspahr.com

                                                *Attorneys for Plaintiff Spark Therapeutics, Inc.*