# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPARK THERAPEUTICS, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 21-705-LPS |
| BLUEBIRD BIO, INC., | : |
| Defendant. | : |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Dated: October 28, 2021

Robert R. Baron, Jr. (*pro hac vice*)
Thomas J. Gallagher, IV (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia , PA 19103-7599
Tel.: 215-864-8500
Email: baron@ballardspahr.com
         gallaghert@ballardspahr.com

Susan A. Smith (*pro hac vice*)
BALLARD SPAHR LLP
190 K Street, NW, 12th Floor
Washington, DC 20006-1157
Tel.: 202-661-2247
Email: smiths@ballardspahr.com

Maxwell C. Preston (*pro hac vice*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel.: 646-346-8004
Email: prestonm@ballardspahr.com

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 N. Market St, 11th Floor
Wilmington, DE 19801-3034
Tel.: 302-252-4447
Email: moskowb@ballardspahr.com

*Attorneys for Plaintiff Spark Therapeutics, Inc.*

# **TABLE OF CONTENTS**

                                                                                       **Page**

I.     FALSE CLAIM OF FAIR USE ............................................................................................. 1

II.    IRRELEVANT CLAIMS REGARDING PRODUCTS AND PATIENTS ....................... 2

III.   BLUEBIRD'S ERRONEOUSLY NARROW FOCUS ...................................................... 3

IV.   LIKELIHOOD OF SUCCESS ON THE DELAWARE DILUTION CLAIM................... 4

        A.     Basis of the Dilution Claim...................................................................................... 4

        B.     The Distinctiveness Requirement ............................................................................ 5

        C.     Likelihood of Dilution ............................................................................................. 6

V.    LIKELIHOOD OF SUCCESS ON TRADEMARK INFRINGEMENT............................ 6

        A.     Strength of the Mark ............................................................................................... 6

        B.     Similarity of Marks ................................................................................................. 7

        C.     Similarity of Marketing Channels, Targets, and Services ...................................... 8

        D.     Sophistication of Consumers .................................................................................. 8

        E.     Good Faith ............................................................................................................... 8

VI.   IRREPARABLE HARM IS PRESUMED ........................................................................ 9

VII.  BALANCE OF HARDSHIPS AND PUBLIC INTEREST FAVOR SPARK ................ 10

VIII. CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*,
  793 F.3d 313 (3d Cir. 2015)..................................................................................................2, 8

*Barnes Grp. Inc. v. Connell Ltd. P'ship*,
  793 F. Supp. 1277 (D. Del. 1992)...............................................................................................5

*Carnivale v. Staub Design, LLC*,
  700 F. Supp. 2d 660 (D. Del. 2010)............................................................................................6

*Draper Commc'ns., Inc. v. Del. Valley Broads. Ltd. P'ship*,
  505 A.2d 1283 (Del. Ch. 1985)..................................................................................................4

*Ford Motor Co. v. Summit Motor Prods.*,
  930 F.2d 277 (3d Cir. 1991).......................................................................................................4

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)...................................................................................................8, 10

*Monteiro Elec., Inc. v. Monteiro Indus. Elec.*,
  24 Mass. L. Rep. 632 (2008).......................................................................................................9

*N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*,
  293 F.3d 550 (2d Cir. 2002).......................................................................................................5

*Nichino Am., Inc. v. Valent U.S.A., LLC*,
  Case No. 1:29-cv-00704, slip op. (D. Del. Mar. 30, 2021).......................................................10

*Ramsey's Mfg. Jewelers, Inc. v. Ramsey*,
  924 So. 2d 1045 (La. App. 5th Cir 2006) ..................................................................................9

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
  453 F. Supp. 2d 834 (D. Del. 2006).......................................................................................5, 6

*South Central Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*,
  744 F.2d 1107 (5th Cir. 1984) ...................................................................................................9

*SportFuel, Inc. v. PepsiCo, Inc.*,
  932 F.3d 589 (7th Cir. 2019) .....................................................................................................1

*Times Mirror Magazines Inc. v. Las Vegas Sports News*,
  212 F.3d 157 (3d Cir. 2000).....................................................................................................10

*Treasury Mgmt. Servs. v. Wall St. Sys. Del.*,
    2017 U.S. Dist. LEXIS 68656 (D. Del. May 5, 2017)..................................................................6

*USPTO v. Booking.com B.V.*,
    140 S. Ct. 2298 (2020).................................................................................................................6

*World Entm't, Inc. v. Brown*,
    Civ. A. No. 09-5365, 2011 WL 2036686 (E.D. Pa. May 20, 2011), *aff'd* 487
    F. App'x 758 (3d Cir. 2012) ........................................................................................................9

**Statutes**

6 Del. C. § 3313 ..................................................................................................................................9

15 U.S.C. § 1116(a) ............................................................................................................................9

**Other Authorities**

2 McCarthy §11:48.50 .......................................................................................................................1

Bluebird ducks the issues in its opposition brief. As a threshold matter, Bluebird claims it is merely making "fair use of the word 'spark'" but ignores its prominent use of the mark as its brand, including its use of the "TM" symbol next to SPARK and its trademark applications for SPARK marks. Bluebird then claims the SPARK mark already is diluted, citing SPARK marks in far-flung fields such as "underwater water pumps", but ignores that the SPARK mark is exclusive *in the field of gene therapy.* Bluebird claims that no one will be confused about the parties' "products" but ignores the parties' *services*, as well as the likelihood that physicians in the gene therapy field will be confused about corporate partnership/affiliation. Finally, Bluebird claims it will be harmed by having to "end" its educational campaign but ignores that Spark seeks an end only to Bluebird's use of Spark's trademark in the campaign, not Bluebird's educational content. As discussed below, a proper focus on the issues shows that Bluebird's use of Spark's house mark in the gene therapy field is likely to dilute Spark's mark and cause confusion in the field.

## I.     FALSE CLAIM OF FAIR USE

Bluebird and its expert claim Bluebird's use of SPARK is descriptive fair use, a claim belied by, *inter alia*, Bluebird's use of BE THE SPARK[TM] on its website and its multiple applications to register SPARK marks with the USPTO *as trademarks,* as well as its repeated use of SPARK in larger font and stylized graphics to serve as Bluebird's anchoring thematic brand for its services.[1] Memo.[2] at 17-18. They also claim that use of SPARK with other words (e.g., Spark Change, Spark Hope) precludes trademark usage, but the "sheer repetition of SPARK, an anchor to which other words are tethered, is compelling evidence of its central role as a branding element."

---

[1] Bluebird cites *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589 (7th Cir. 2019), to argue that trademark applications do not mean trademark use, but that case involved a "specifically disclaimed" descriptive phrase used with a house mark, neither of which is applicable here.

[2] "Memo." refers to Spark's opening PI brief dated August 6, 2021. *See* Doc. 19.

McDonald Reb. Rpt. (Ex. W) ¶ 22; *see also* 2 MCCARTHY §11:48.50 ("Overuse of another's trademark, even in a descriptive sense, may not be a fair use because such repetition builds up a likelihood of confusion of connection or sponsorship.") Bluebird's trademark applications and refusal to cease use of SPARK despite legal challenge is further proof that Bluebird considers SPARK an important branding element.

Bluebird's head of marketing, Bill Nichols, Jr., essentially admits that Bluebird uses SPARK as a trademark by referring to its use of "Be the Spark" as a "***campaign***" throughout his declaration. *See, e.g.,* Nichols Dec., ¶¶ 50-54. Indeed, the entire declaration speaks to how important the "Be the Spark campaign" (his term) has been, how difficult it would be to change and develop "a new campaign," and how Bluebird would suffer from the loss of "[v]iewership." *Id.* ¶ 54. Ironically, his list of alleged harms do not arise from the change of a fairly-used word of prose in an educational message, but from being enjoined from using SPARK in a textbook source-identifying manner.

Bluebird's branding expert claims Bluebird's use of SPARK is no more than a "call to action", *i.e.*, descriptive use. Chiagouris ¶¶ 35-45. But a "call to action" can certainly function as a trademark—*see, e.g.,* the use and registration by Nike of the "call to action" JUST DO IT. A "call to action" can also be—and often is-- a branding element and trademark based on the way it is used. McDonald Reb. Rpt. ¶ 21. Bluebird's "Be the Spark campaign" is such a branding element.

## II.   IRRELEVANT CLAIMS REGARDING PRODUCTS AND PATIENTS

Bluebird and its expert build a strawman that Spark is claiming dilution and confusion *regarding products*, which they attack by saying Bluebird does not sell any products. *E.g.*, Opp. at 2, 13, 15, 18. But neither Bluebird nor its expert address Spark's actual argument that clinicians and others in the field will be confused about the *source* of the "Be the Spark" campaign and the *relationship* between Bluebird and Spark. The Third Circuit has repeatedly held that the Lanham

2

Act protects against the likelihood of confusion "of any kind," even where no purchase is involved. *See Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 323 (3d Cir. 2015).

With the focus on products, Bluebird sidesteps the fact that Bluebird is providing (and has applied for) *services*, namely promotional and educational activities related to gene therapy and hematological disease. Memo. at 3-5, 13-14; Ex. B. Spark is providing (and has registered for) these same services. Memo. at 1-2, 13-14; Philip Dec. ¶ 19; Ex. R.

### III. BLUEBIRD'S ERRONEOUSLY NARROW FOCUS

Despite Spark's federal trademark registration for SPARK broadly covering "hematologic disorders and diseases," Bluebird would have this Court limit Spark's rights only to hemophilia and only to gene therapies based on "adeno-associated vector (AAV)". *See, e.g.*, Opp. at 3, 6, 8, 14-16. Since Bluebird's focus is sickle cell disease (SCD) and therapies based on "lentiviral vector (LVV)", Bluebird claims to be off the hook. But this is an absurdly narrow view. Spark's rights are not limited to hemophilia nor to gene therapies based on AAV, and at least extend to another gene therapy company working on another hematologic disorder.

Bluebird and its declarant incorrectly contend that "the hematologists who treat hemophilia are not the same as the hematologists who treat SCD" (Opp. at 6), and that the specialists who treat or research hemophilia and SCD do not overlap (Doc. 28 (the "Chawla Dec.") ¶¶ 12-14). Many hematologists treating hemophilia also treat SCD. *See* Memo. at 5 (citing Levy Dec. ¶ 14; McDonald Rpt. ¶¶ 29-30); Levy Reply Dec. ¶¶ 5-6. Indeed, an Internet search reveals numerous hematologists—including in Delaware—who treat and/or research both hemophilia and SCD. Ex. Q. Spark and Bluebird are speaking to the same audience, sometimes at the same time, as shown by the appearance of both Spark and Bluebird on the same gene therapy panel at a 2021 American Society of Gene and Cell Therapy (ASGCT) conference. McDonald Reb. Rpt. ¶ 17.

3

## IV.     LIKELIHOOD OF SUCCESS ON THE DELAWARE DILUTION CLAIM

### A.     Basis of the Dilution Claim

Bluebird inaccurately claims that Spark's sole basis for its Delaware dilution claim is its federal registration. Opp. at 11. Not so. The DTA protects "a mark valid at common law or a trade name valid at common law.". In its Complaint, Spark defines "SPARK Marks" as "the Spark company name and trademarks" (D.I. 1 ¶ 3), and asserts common law rights in the SPARK Marks (*id.* ¶¶ 69, 90, 93). A party owns valid trademark or trade name rights at common law when the mark or name has been continuously used and is distinctive. *See, e.g.*, *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 291-92 (3d Cir. 1991); *Draper Commc'ns., Inc. v. Del. Valley Broads. Ltd. P'ship*, 505 A.2d 1283, 1289 (Del. Ch. 1985). Thus, in pleading and arguing that Bluebird's misconduct is likely to dilute Spark's SPARK marks, Spark asserts it has used its source-identifying name and marks for years, including in Delaware (*see id.* ¶¶ 16-27, 79; Memo. at 1-2), and its name and marks are inherently distinctive and have become well-known through Spark's extensive use (*id.* ¶¶ 15, 78; Memo. at 1-2, 7-9; Levy Reply Dec. ¶¶ 1-4). Spark does not rely on its federal registrations to claim eligibility under the DTA, but rather as evidence of the requirement of distinctiveness. (Memo. at 7; *see also supra* at 5).

Spark has provided evidence regarding its extensive use of its SPARK name and mark. Memo. at 1-3 (citing Philip Dec., Levy Dec. & McDonald Rpt.). Spark has achieved global recognition for its pioneering gene therapy work, including obtaining the first FDA approval. *See id.* at 1. This approval was highly publicized, including in national media (the Washington Post, Wall Street Journal, Chicago Tribune) and media followed by medical professionals (STAT). Ex. V. As a result of this—as well as Spark's promotional and educational services provided regularly at scientific conferences and via Hemophilia Forward—Spark is well-known by hematologists and other healthcare professionals.

### B. The Distinctiveness Requirement

Bluebird mischaracterizes the distinctiveness element of the Delaware dilution claim as requiring the mark to be "extremely strong". Opp. at 11-12. Delaware case law—as well as the statutory language—only requires the mark to be "distinctive". *See supra* Section IV.A; Memo. at 6. "Proof of distinctiveness necessary to satisfy the antidilution statutes typically is the same proof used to show inherent or acquired distinctiveness for infringement purposes under the Lanham Act." *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1304 (D. Del. 1992).

The language on which Bluebird relies has not been applied to Delaware dilution laws. Instead, Bluebird cites two New York cases, interpreting New York's statute, for the "extremely strong" requirement. But the Second Circuit has stated that the "only question[s]" for a court considering a New York dilution claim are whether a mark is distinctive, and whether there is a likelihood of dilution. *See N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 557 (2d Cir. 2002).[3] So the "extremely strong" requirement is not even applicable in New York.

Bluebird next contends that Spark has made "no showing" that its mark is distinctive. Specifically, Bluebird claims that Spark must prove "secondary meaning" because "there are over 900 companies in Delaware that use some version of the word 'Spar' in their names". But proof of secondary meaning is only required for descriptive marks, not arbitrary or suggestive marks like SPARK which are considered inherently distinctive. *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 850 (D. Del. 2006). While "spark" may be an "ordinary English word" (Opp. 12), the SPARK mark is arbitrary or suggestive in the field of gene therapy. While "Spar" company names and marks may be seen in other fields, Spark holds exclusive rights in the field of

---

[3] Contrary to Bluebird's claims, bad faith is not an element of dilution claims under the law of Delaware (*see* Memo. at 6) or New York (*see N.Y. Stock Exch.*, 293 F.3d at 557).

5

hematologic disorders and diseases. *See, e.g.*, U.S. Reg. No. 5,068,997 for SPARK (Ex. A).

### C. Likelihood of Dilution

Bluebird cites the wrong test of likelihood of dilution by blurring. The six-factor test cited by Bluebird has never been applied to a Delaware dilution claim. Rather, courts in Delaware look to whether consumers would make "some mental association between the marks" that might blur "a mark's product identification." *See* Memo. at 7 (citing *Treasury Mgmt. Servs. v. Wall St. Sys. Del.*, 2017 U.S. Dist. LEXIS 68656, at *12 (D. Del. May 5, 2017)); *Sanofi-Aventis*, 453 F. Supp. 2d at 855. Spark demonstrated that this standard has been met. *See* Memo. at 8-9.

Even if the six-factor test were applicable, its application supports Spark: (1) the marks are similar if not identical (*see* Memo. at 8-9, 12-13; *infra* § V.B); (2) the services are similar or the same (*see* Memo. at 8-9, 13-14; *infra* §§ II, V.C); (3) medical professionals are not sophisticated regarding corporate relationships (*see* Memo. at 15-16; *infra* § V.D); (4) Bluebird acted with full knowledge of Spark's prior rights (*see* Memo. at 15; *infra* § V.E); (5) the SPARK name and mark is well-known among those treating blood disorders (*see* Memo. at 8-9, 11-12; *infra* §§ III, V.A); and (6) Bluebird's "Be the Spark campaign" is not well-known (*see* Chawla Dec. ¶ 39). By contrast, Bluebird's application was incorrect: (i) Bluebird falsely claims fair use; (2) Bluebird wrongly focuses on products rather than services and corporate affiliation; (3) Bluebird wrongly focuses on sophistication in prescribing gene therapies; (4), Bluebird ignores its prior knowledge of Spark and the SPARK mark; (5) Bluebird ignores Spark's evidence of renown in the gene therapy field; and (6) Bluebird fails to address (and thus admits) lack of renown of its own marks.

## V. LIKELIHOOD OF SUCCESS ON TRADEMARK INFRINGEMENT

### A. Strength of the Mark

Bluebird contends that SPARK is suggestive and "weak." Opp. at 17. But suggestive marks are inherently distinctive and "entitled to a high degree of protection." *Sanofi-Aventis*, 453 F. Supp.

6

2d at 850; *USPTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2303 (2020). Indeed, the USPTO allowed Spark's trademark applications without a showing of acquired distinctiveness, which evidences inherent distinctiveness. *Carnivale v. Staub Design, LLC*, 700 F. Supp. 2d 660, 665 (D. Del. 2010).

Bluebird also contends that SPARK is weak because there are "more than 1400 live registrations or applications containing SPARK" and "hundreds of companies" that "use some variant of the word spark." Opp. at 17; *see also id.* at 12. These numbers are the result of unrestricted searches for "spark". When the USPTO search is properly limited to "gene therapy", only seven results are retrieved—six owned by Spark and one owned by Bluebird. Ex. T. When the Internet search is properly limited to "gene therapy", Spark is the first and only reference retrieved for several pages. Ex. U. Bluebird's expert similarly tries to drown out SPARK with references to marks in unrelated fields. Chiagouris, Exs. 5-8. By contrast, Spark's expert properly focuses on gene therapy and shows that SPARK is well-known for its seminal role in that field. McDonald Rpt. §§ 2, 24-25; McDonald Reb. Rpt. §§ 13-17.

In further support of the strength of its marks, Spark has provided sworn declarations from two of its executives describing Spark's extensive work in gene therapy and hematology fields, which supports the commercial strength of the SPARK marks. *See* Memo. at 1-3, 11-12 (citing Philip Dec., Levy Dec., and McDonald Rpt.); Levy Reply Dec. ¶¶ 1-4.

### B.     Similarity of Marks

Bluebird disingenuously claims that the marks at issue are "dissimilar" despite every one of them containing SPARK. Merely adding additional wording to another party's mark does not avoid a likelihood of confusion, particularly where, as here, the other party's mark forms the dominant portion of the mark. Memo. at 12-13. Bluebird conspicuously avoids the fact that its entire campaign is SPARK-themed. McDonald Reb. Rpt. ¶ 20.

### C.     Similarity of Marketing Channels, Targets, and Services

Bluebird takes the odd position that there are "no relevant marketing channels." Opp. at 18. As discussed, however, the marketing channels of both parties include scientific conferences and online campaigns. Both parties are extremely active in this area, sometimes joining forces on conference panels and social media events. *Supra* § III; Ex. S. Spark and Bluebird target the same audience—medical professionals who specialize in rare blood disorders (hematologists). *See* Memo. at 14. Indeed, Bluebird has tweeted about Spark's and Bluebird's shared "efforts to bring gene therapy to patients." Ex. S. And as discussed, numerous hematologists—including in Delaware—address both sickle cell and hemophilia. *See supra* § III. This connection also is seen in the similar services applied for by Bluebird and registered by Spark: educational and promotional services relating to hematological diseases and gene therapies. See *supra* § II.

### D.     Sophistication of Consumers

Bluebird argues that physicians and patients exercise a high degree of care "when prescribing or consenting to a therapy". This misses the point. Spark contends that clinicians and others in the field will be confused about the source of Bluebird's campaign, the relationship between Bluebird and Spark, and other mistakes as to source or corporate affiliation. As the Third Circuit has repeatedly held, the Lanham Act protects against "any kind" of likelihood of confusion, even if no purchase is involved. *See Arrowpoint*, 793 F.3d at 323 (confusion "of any kind", including initial-interest confusion). Bluebird ignores binding precedent that physicians' "medical expertise" does not make them sophisticated in terms of corporate relationships. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 717 (3d Cir. 2004); *see also* Memo. at 15-16.

### E.     Good Faith

Bluebird does not deny knowledge of Spark or its SPARK mark when it created its "Be the SPARK" campaign. Thus, Bluebird was either purposeful or reckless in choosing SPARK as the

8

focal point for a campaign related to hematological disease and gene therapy. *See* Memo. at 15.

## VI.   IRREPARABLE HARM IS PRESUMED

Bluebird falsely states there is no presumption of irreparable harm in Lanham Act cases by citing a case from 2014 (Opp. at 20), which is irrelevant in view of last year's codification of the presumption of irreparable harm. 15 U.S.C. § 1116(a). Similarly, irreparable harm does not need to be proven under the DTA because the statute expressly authorizes an injunction.[4]

Bluebird then falsely claims there is no evidence of irreparable harm (Opp. at 20), despite both Spark and its expert having described the threat facing Spark, including the loss of control of reputation and goodwill. Memo. at 19. Irreparable injury also exists when '[d]amages from defendants' continuing infringement would be difficult to determine." *World Entm't, Inc. v. Brown*, Civ. A. No. 09-5365, 2011 WL 2036686, at *6 (E.D. Pa. May 20, 2011), *aff'd* 487 F. App'x 758 (3d Cir. 2012). The harm Bluebird is causing Spark is impossible to quantify as money damages. This is not a case where one company improperly uses the mark of a competitor on its product, a case lending itself to the calculation of damages. Here, Bluebird is misappropriating Spark's house mark and trade name—which capture all of the goodwill associated with the company—and using it in ways that suggest an affiliation with Spark. This loss of control over reputation constitutes irreparable injury for which monetary damages are inadequate.

Bluebird then reverses course, admitting there *is* a presumption but arguing it does not apply because Spark delayed—13 months in filing suit and three months in filing for a PI. Opp. at

---

[4] *See* 6 Del. C. § 3313 (a likelihood of dilution of a distinctive mark or name "shall be a ground for injunctive relief."). And when "an injunction is expressly authorized by statute and the statutory conditions are satisfied… irreparable injury need not be established." *South Central Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 744 F.2d 1107, 1120 (5th Cir. 1984); *Monteiro Elec., Inc. v. Monteiro Indus. Elec.*, 24 Mass. L. Rep. 632 (2008); *Ramsey's Mfg. Jewelers, Inc. v. Ramsey*, 924 So. 2d 1045 (La. App. 5th Cir 2006) (reviewing identical statutory language and stating "anti-dilution statute, presents a lower burden than the irreparable injury standard").

20. Of course, Spark's alleged failure to act before it was aware of Bluebird's "Be the Spark" campaign is not delay. And taking three months to prepare a lengthy PI filing with witness declarations and an expert report is not unreasonable, especially as Spark also used that time to try to find an amicable resolution. *See* Memo. at 6; *Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157, 169 (3d Cir. 2000) (finding irreparable harm where plaintiff's "15-month delay [in filing suit] was attributable to negotiations between the parties"); *see also Kos*, 369 F.3d at 727 (same, where delay in filing suit was due to attempts to resolve the dispute).[5]

## VII. BALANCE OF HARDSHIPS AND PUBLIC INTEREST FAVOR SPARK

Bluebird argues that the balance of hardships and public interest favor denying a preliminary injunction because granting an injunction "would terminate bluebird's campaign" and "remove this valuable resource from the SCD community." Opp. at 19-20. Again, Bluebird and its declarant Nichols ignore that Spark seeks only to end Bluebird's infringing and dilutive conduct—not Bluebird's campaign. Memo. at 19-20. If Bluebird suffers any cost or reputational harm from being required to edit the campaign, such harm is self-inflicted. *See Kos*, 369 F.3d at 728. If Bluebird chooses to shutter its campaign entirely, Bluebird will be the one depriving the SCD community of an alleged resource, not Spark.

## VIII. CONCLUSION

Spark requests that the Court grant a preliminary injunction enjoining Bluebird's dilution and infringement of the SPARK mark and name pending trial.

---

[5] In a recent unpublished decision, this Court found the presumption of irreparable harm was rebutted by certain *Lapp* factors. *See Nichino Am., Inc. v. Valent U.S.A., LLC*, Case No. 1:29-cv-00704, slip op. at *22-26 (D. Del. Mar. 30, 2021). The plaintiff has appealed the Court's consideration of irreparable harm. In any event, the *Nichino* case is distinguishable because here the *Lapp* factors are not "closely balanced" (rather, they strongly favor Spark), the similarity of the marks does not only "slightly favor Plaintiff" (since Bluebird is using SPARK), and the purchasers are not "highly sophisticated" (at least with respect to corporate affiliations).

Dated:  October 28, 2021 　　　　　　　　　 */s/ Beth Moskow-Schnoll*
　　　　　　　　　　　　　　　　　　　　　 Beth Moskow-Schnoll (No. 2900)
　　　　　　　　　　　　　　　　　　　　　 BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　　 919 N. Market St, 11th Floor
　　　　　　　　　　　　　　　　　　　　　 Wilmington, DE 19801-3034
　　　　　　　　　　　　　　　　　　　　　 Tel.: 302-252-4447
　　　　　　　　　　　　　　　　　　　　　 Email: moskowb@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　　 Robert R. Baron, Jr. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　 Thomas J. Gallagher (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　 BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　　 1735 Market Street, 51st Floor
　　　　　　　　　　　　　　　　　　　　　 Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　 Tel.: 215-665-8500
　　　　　　　　　　　　　　　　　　　　　 Email: baron@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　　 　　　　 gallaghert@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　　 Susan A. Smith (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　 BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　　 1909 K Street, NW, 12th Floor
　　　　　　　　　　　　　　　　　　　　　 Washington, DC 20006-1157
　　　　　　　　　　　　　　　　　　　　　 Tel.: 202-661-2247
　　　　　　　　　　　　　　　　　　　　　 Email: smiths@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　　 Maxwell C. Preston (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　 BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　　 1675 Broadway, 19th Floor
　　　　　　　　　　　　　　　　　　　　　 New York, NY 10019-5820
　　　　　　　　　　　　　　　　　　　　　 Tel.: 646-346-8004
　　　　　　　　　　　　　　　　　　　　　 Email: prestonm@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　　 *Attorneys for Plaintiff Spark Therapeutics, Inc.*